# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PAULA COSBY,                          :
                                      :
            Plaintiff,                :        K15C-06-019 JJC
                                      :        In and For Kent County
      v.                              :
                                      :
CORRECT CARE SOLUTIONS,               :
LLC,                                  :
                                      :
            Defendant.                :
                                      :

Submitted:  November 4, 2016
Decided:  December 6, 2016

## MEMORANDUM OPINION

*Upon Defendant's Motion for Summary Judgment – GRANTED*

Daniel C. Herr, Esquire, Law Office of Daniel C. Herr, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, LLC, Wilmington, Delaware, Attorney for the Defendant.

Clark, J.

## I.    Introduction

Plaintiff Paula Cosby (hereinafter "Ms. Cosby") worked for Defendant Correct Care Solutions, LLC (hereinafter "Correct Care"). Her employer fired her one day before her ninety day probationary period ran. Correct Care claims that she failed to properly perform her job duties and follow company policy. Ms. Cosby, on the other hand, claims that because of an unreceptive and unfair work environment and a lack of proper training, she was unable to meet the expectations of her employer. She now sues her former employer for (1) breach of the implied covenant of good faith and fair dealing, and for (2) violating the Delaware Discrimination in Employment Act (hereinafter "DDEA")[1] by terminating her because of her race. Correct Care filed a motion for summary judgment arguing that Ms. Cosby's two claims fail. While there may be genuine disputes in the record regarding whether her discharge was just or fair, there are no genuine issues of fact regarding the two asserted claims. For the following reasons, Correct Care's Motion for Summary Judgment is **GRANTED**.

## II.    Factual and Procedural Background

Since this matter involves a motion for summary judgment, the facts cited herein are those contained in the record and are viewed in the light most favorable to Ms. Cosby, as the nonmoving party.[2] Correct Care is a contractor providing comprehensive healthcare services to inmates in Delaware, including those at James T. Vaughn Correctional Center (hereinafter "JTVCC"). Correct Care hired Ms. Cosby, an African American female, as an administrative assistant in June 2013. She was an at-will employee, and Ms. Cosby's first ninety days were her

---

[1] 19 *Del. C.* §§ 710 *et seq.*

[2] *E.g.*, *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

2

probationary period. Ms. Cosby's job responsibilities included monitoring the company's supply inventory, ordering new supplies, maintaining the supply closest, and organizing patient grievances into a binder and logging those grievances into the computer. Misty May, the person who hired Ms. Cosby, was her supervisor. However, because Ms. May's job responsibilities required frequent absences from the office, Ms. Roy-Stevenson was responsible for training Ms. Cosby despite the fact that she was also an administrative assistant on the same professional level as Ms. Cosby.

The relationship between Ms. Cosby and Ms. Roy-Stevenson was strained. As alleged, and when viewing the facts in the light most favorable to Ms. Cosby, she was treated unfairly at times, and insufficiently trained in her job responsibilities. For instance, according to Ms. Cosby, Ms. Roy-Stevenson's method of training typically consisted of her telling Ms. Cosby how to do something and then sending her off to do it by herself.[3] As a specific example, when Ms. Cosby attempted to order paper at Ms. Roy-Stevenson's request, Ms. Roy-Stevenson merely told Ms. Cosby to go into the copy room and order it.[4] After Ms. Cosby realized there were several different types of paper, she informed Ms. Roy-Stevenson that she did not know how to order the paper or what type to order.[5] Ms. Roy-Stevenson's response was merely to tell Ms. Cosby to go into the copy room "and order the ones from the standard."[6] When Ms. Cosby attempted to order the paper without further assistance, she ordered the wrong type of paper.[7]

---

[3] Cosby Dep. 25:17-23; 30:8.

[4] *Id.* at 25:18–19.

[5] *Id.* at 25:20–21.

[6] *Id.* at 25:22–23.

[7] *Id.* at 26:2–3.

On another occasion Ms. Cosby attempted to order hypodermic needles. She informed Ms. Roy-Stevenson that she was unsure of what to order.[8] In response, Ms. Roy-Stevenson said "I don't have time right now. Look on the computer. They are different numbers."[9] When Ms. Cosby still could not determine what type of needles to order, she returned to Ms. Roy-Stevenson who then gave her the name of the correct needle type.[10] However, as with the paper order, Ms. Cosby nevertheless ordered the wrong type.[11] On balance, the only type of training Ms. Cosby received from Ms. Roy-Stevenson regarding her various job duties was Ms. Roy-Stevenson telling her what to do instead of showing her how to complete the tasks.[12]

According to Ms. Cosby, and accepted for purposes of this motion, not only did Ms. Roy-Stevenson fail to adequately train Ms. Cosby, she treated Ms. Cosby unprofessionally and was often rude to her. For instance, when Ms. Cosby would ask Ms. Roy-Stevenson to do something, Ms. Roy-Stevenson would roll her eyes at her and use a disrespectful tone.[13] On one occasion, Ms. Cosby called employees to ensure they were up-to-date on their training.[14] When she could not reach one of the employees because she was provided a wrong number, Ms. Roy-Stevenson accused her of not actually calling that employee.[15]

---

[8] *Id.* at 26:4.

[9] *Id.* at 26:4–5.

[10] *Id.* at 26:6–8.

[11] *Id.* at 26:8.

[12] *Id.* at 26:20–21.

[13] *Id.* at 37:20; 46:17–18.

[14] *Id.* at 42:16–17.

[15] *Id.* at 42:3–7.

4

Despite Ms. Cosby's allegations of inadequate training and inappropriate treatment by Ms. Roy-Stevenson, according to Correct Care, Ms. Cosby did not meet job expectations. Namely, on multiple occasions, Ms. Cosby's fellow employees had to remind her to unpack and shelve supplies as well as to organize the supply closet. During the time Ms. Cosby was responsible for ordering and maintaining supplies, there was a shortage of diabetic needles which could have had serious consequences for inmates' health.[16] As a result, the company had to place an urgent order for the needles and the Community Emergency Response Team was forced to pick them up and return them to JTVCC.[17]

Additionally, while Ms. Cosby was responsible for maintaining supplies, she did not order empty sharps containers in the main medical unit. Without sufficient sharps containers, medical providers have no safe (or legal) place to put used needles that could be contaminated with disease. At one point, a nurse was forced to email Ms. Cosby informing her that there were only four sharps containers left after she told Ms. Cosby a couple days earlier that their supply was low.[18] Ms. May also had received that email,[19] and she sent the email to Ms. Roy-Stevenson who ensured the sharps containers were ordered.[20]

Furthermore, at the beginning of every month, the Department of Correction (hereinafter "DOC") requires inmate grievances to be submitted. Ms. Cosby's job responsibilities included compiling these grievances and logging them. On the day the grievance reports were due to DOC, Ms. Cosby was absent from work due to

---

[16] Def. Ex. A.

[17] *Id.*

[18] Def. Ex. I (email from Jennifer Newman to Paula Cosby and Misty May on Aug. 24, 2013).

[19] *Id.*

[20] *Id.* (emails between Misty May and Tina Roy-Stevenson on Aug. 27, 2013).

5

an illness and had not completed this task. Due to her inability to finish the grievance reports, other employees were forced to file 150 grievance reports by the end of the day.

Finally, even when viewing all facts in the light most favorable to Ms. Cosby, she failed to follow Correct Care's call-out policy for missing work. The company's policy requires employees to notify the on-call administrator at least four hours before the start of the shift at issue. Ms. Cosby missed three shifts and did not adhere to the four hour call-out policy on any occasion.

Correct Care terminated Ms. Cosby's employment the day before her ninety day probationary period was to end. Following her termination, Ms. Cosby sued her former employer asserting two causes of action. First, she argues that her termination was the result of Ms. Roy-Stevenson creating fictitious grounds to terminate her in violation of the covenant of good faith and fair dealing. Ms. Cosby claims that it was Ms. Roy-Stevenson's representations to Ms. May that led to her termination. She further argues that her mistakes were the result of Ms. Roy-Stevenson not properly training her or interfering with her work. She also emphasizes that she had a very real and significant health concern, requiring an understandable and excused absence during the period at issue.[21] As such, Ms. Cosby claims that Ms. Roy-Stevenson created the fictitious grounds that Ms. May in turn used to terminate her.

---

[21] Ms. Cosby went to the hospital on August 24, 2013 after experiencing lower abdominal pains and an inability to urinate. Pl. Ex. M. A doctor provided her with medicine and inserted a catheter to treat Ms. Cosby's symptoms. *Id.* The hospital discharged her that same day. *Id.* Despite her discharge, the catheter remained inserted in her bladder. *Id.* Ms. Cosby then consulted with an Urologist on August 30, 2013. Pl. Ex. N. Her catheter was still inserted in her bladder during this time. *Id.* She returned to the Urologist on September 3 and 4 of 2013. *Id.* Because her condition did not improve, Ms. Cosby went back to the hospital on September 4, 2013 where a doctor removed the catheter. Pl. Ex. O. Because of this condition, Ms. Cosby missed work September 3-5. Of note, Plaintiff does not bring suit against Correct Care for a violation of the Family Medical Leave Act. 29 U.S.C.A. § 2611 *et seq.*

Second, Ms. Cosby alleges her termination violated the DDEA.[22] She argues that she is able to establish a prima facie case of discrimination under the *McDonnell Douglas* test and eliminate Correct Care's proffered legitimate business reasons for the termination.[23] Moreover, Ms. Cosby claims that Correct Care treated her less favorably than others based on her race. Therefore, she argues that the Court should draw an inference that the decision to terminate her was the product of impermissible considerations, and she should therefore avoid summary judgment.

In response, Correct Care argues that the company had legitimate business reasons to fire Ms. Cosby. As such, she is unable to show a breach of the implied covenant of good faith and fair dealing. Correct Care also argues that Ms. Cosby is unable to show a connection or nexus between her race and the decision to terminate her employment. Accordingly, Correct Care argues that Ms. Cosby is unable to maintain a claim under the DDEA.

## III. Standard of Review

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[24] In doing so, the Court must accept all undisputed factual assertions and accept the nonmoving party's version of any disputed facts.[25] The burden is on the moving party to show that there are no material facts in

---

[22] 19 *Del. C.* §§ 710 *et seq.*

[23] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

[24] *Super. Ct. Civ. R.* 56(c); *Moore*, 405 A.2d at 680.

[25] *Sztybel v. Walgreen Co.*, 2011 WL 2623930, at *2 (Del. Super., June 29, 2011).

7

dispute.[26]  When the facts of record "permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law."[27]

## IV.   Discussion

Even when all inferences are drawn in the light most favorable to Ms. Cosby, she does not demonstrate that Correct Care's proffered reasons for her termination were misrepresented, deceitful, or false.  Accordingly, there is not a triable issue of fact regarding the claim for breach of the implied covenant of good faith and fair dealing.  Furthermore, there are no facts of record supporting a nexus between Ms. Cosby's race and Correct Care's decision to terminate her. Accordingly, her DDEA claim must also be dismissed.

### A. *Ms. Cosby's implied covenant of good faith and fair dealing claim must be dismissed on summary judgment.*

Ms. Cosby argues that her termination breached the implied covenant of good faith and fair dealing.  The Delaware Supreme Court has held that there is an implied covenant of good faith and fair dealing in every employment contract, including at-will employment contracts.[28]  However, this "covenant limits at-will employment only in very narrowly defined categories."[29]  There are only four instances where a claim based on the breach of this covenant are actionable:

---

[26] *Moore*, 405 A.2d at 680.

[27] *Friel v. Hartford Fire Ins. Co.*, 2014 WL 1813293, at *2 (Del. Super. May 6, 2014) *aff'd Friel v. Hartford Fire Ins. Co.*, 108 A.3d 1225 (Del. 2015) (citing *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967)).

[28] *E.g.*, *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992).

[29] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 441 (Del. 1996).

8

(i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one; (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.[30]

The relevant alternative here includes the fourth instance. To satisfy her burden in this case, Ms. Cosby must show that facts of record support a reasonable inference that Correct Care's actions included "an aspect of fraud, deceit or misrepresentation."[31]

For Ms. Cosby to maintain a breach of the implied covenant of good faith and fair dealing claim, she must demonstrate evidence that Correct Care *manufactured* grounds for dismissal.[32] This requires a showing that the employer actually created false grounds for firing an employee. The Delaware Supreme Court has analyzed the implied covenant of good faith and fair dealing in terms of fictitious grounds for termination on several occasions.[33] When the Court is required to so limit at-will employment, it does so hesitantly so as not to impair the doctrine of at-will employment.[34] As the Delaware Supreme Court held in *E.I.*

---

[30] *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) (citing *E.I. DuPont de Nemours & Co.*, 679 A.2d at 442–44).

[31] *Merrill*, 606 A.2d at 101.

[32] *E.g.*, *E.E.O.C. v. Avecia, Inc.*, 151 Fed. Appx. 162, 166 (3d Cir. 2005); *Reed v. Agilent Technologies, Inc.*, 174 F. Supp. 2d 176, 191 (D. Del. 2001) (stating that providing a false reason for terminating employment was not sufficient to bring a claim for breach of this implied covenant; Plaintiff must show that employer manufactured grounds for termination).

[33] *E.g.*, *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 830–32 (Del. 2005); *Pressman*, 679 A.2d at 440–44.

[34] *E.g.*, *Pressman*, 679 A.2d at 442.

*Dupont Nemours v. Pressman*, "[d]islike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of at-will employment."[35] Instead, the employee must show that the employer intentionally created false reasons to terminate the employee[36] or that the employer falsified the employee's records.[37]

Here, Ms. Cosby argues that Correct Care breached this covenant by creating fictitious grounds to terminate her employment. Specifically, Ms. Cosby claims that Ms. Roy-Stevenson's representations to Ms. May led to Correct Care firing her. She claims that her inability to order supplies correctly were the result of Ms. Roy-Stevenson's failure to train her. Therefore, the fact that she incorrectly ordered supplies, resulting in a shortage of sharps containers and diabetic needles, was the fault of Ms. Roy-Stevenson's poor training. Furthermore, Ms. Cosby claims that her failure to compile inmate grievances was also the result of Ms. Roy-Stevenson controlling the flow of those grievances. Finally, Ms. Cosby points to her phone records to show that Ms. Roy-Stevenson misrepresented her use of the call-out line as grounds for creating fictitious reasons for termination. However, even when examining the evidence in the light most favorable to Ms. Cosby, she does not set forth the necessary evidence to show that Correct Care created a fictitious record to terminate her.

Other than nominally, Ms. Cosby does not argue that Correct Care manufactured grounds to justify her termination. She does not argue that she properly ordered supplies, completed the grievance log, or correctly followed Correct Care's procedures for missing work and that Correct Care merely lied about these instances to justify her firing. Nor does the record reasonably support

---

[35] *Id.* at 444.

[36] *Id.*

[37] *Rizzitiello*, 868 A.2d at 831.

10

such an inference. Ms. Cosby's own testimony acknowledges that she made mistakes ordering supplies, which was one of several issues Correct Care identified to justify her termination.[38] Additionally, she testified that she logged some of the grievances correctly but did not finish all of them.[39]

Instead of arguing that Ms. Roy-Stevenson misrepresented the instances Correct Care points to, Ms. Cosby's basis for her breach of the implied covenant of good faith and fair dealing claim is her contention that her shortcomings were the fault of Ms. Roy-Stevenson. Therefore, according to Ms. Cosby, because Correct Care fired her for mistakes she attributes to Ms. Roy-Stevenson's failure to train and properly supervise her, Correct Care created fictitious grounds for termination. Such claims are insufficient to show Correct Care manufactured reasons to terminate Ms. Cosby, particularly in light of the fact that she acknowledges that she made these mistakes in her job responsibilities.[40]

In support of her claim, Ms. Cosby further alleges that Correct Care misrepresented the nature of her violation of their call-out policy. In so doing, she provides a call log from her home phone. This log was provided to support an inference that Ms. Roy-Stevenson misrepresented that Ms. Cosby failed to use the proper call-out procedure. Ms. Cosby points to the fact that on the days she missed work, the log shows no calls around the time that Ms. Roy-Stevenson said Ms. Cosby called to inform Correct Care that she was unable to work that shift. However, the call logs only show Ms. Cosby's home phone. The logs do not include calls made from her cell phone despite the fact that she provided Correct

---

[38] Cosby Dep. 26:12–13.

[39] *Id.* at 27:15–17; 28:15–16.

[40] *See Reed*, 174 F. Supp. 2d at 191–92 (stating that where Plaintiff admitted to the wrongdoing alleged by employer, he could not establish sufficient evidence to support a claim that employer manufactured grounds for termination).

Care with both her home and cell phone numbers. Therefore, even if she called the call-out line, cellular phone calls would not show on the logs provided by Ms. Cosby.[41]

Furthermore, two of the three days Ms. Cosby references to show Ms. Roy-Stevenson lied about her use of the call-out procedure were days where she indisputably missed work. The record establishes that Ms. Cosby emailed her supervisor on September 3 and September 5 informing her that she would not be able to make it to work.[42] When reviewing the corresponding phone logs relied upon by Ms. Cosby, the logs also do not show Ms. Cosby made any calls within the time frame she would have needed to call in order to be in compliance with the company's call-out policy.[43]

Moreover, in the email Ms. Cosby sent to her supervisor on September 3, 2013 she indicated that she called Ms. Roy-Stevenson at 7:05 and 9:15 a.m. to inform her that she would be missing work that day.[44] On September 5, 2013, Ms. Cosby emailed her supervisor at 8:13 a.m. to inform her that she would be missing work that day.[45] As Ms. Cosby's shifts started at 7:00 a.m., her timing clearly did not comply with the company's call-out policy, which required at a minimum four hours advance notice.[46] Ms. Cosby's own testimony confirmed that she did not follow the call-out policy. Namely, she testified that she would call-out around 7:00 a.m. or a little before 7:00 a.m. for her shift that began at 7:00 or 7:30 that

---

[41] Def. Ex. I (email from Paula Cosby to Misty May on September 5, 2013).

[42] Def. Ex. I (emails from Paula Cosby to Misty May on September 3 and September 5, 2013).

[43] Pl. Ex. Q.

[44] Def. Ex. I (email from Paula Cosby to Misty May on September 3, 2013).

[45] Def. Ex. I (email from Paula Cosby to Misty May on September 5, 2013).

[46] Def. Ex. F.

12

morning.[47]  By Ms. Cosby's own admission, she did not comply with Correct Care's call-out policy.  There are no facts of record permitting an inference otherwise.

While Correct Care may have treated Ms. Cosby unfairly by providing little to no training and creating an unreceptive work environment, such an inference does not satisfy the standard required to maintain an implied covenant of good faith and fair dealing claim.  At most, Ms. Cosby's evidence demonstrates dislike or ill will which is not actionable under the implied covenant of good faith and fair dealing according to the Delaware Supreme Court's decision in *Pressman*.[48]  Even when examining the facts in a light most favorable to Ms. Cosby, there is no evidence of record permitting an inference that Correct Care manufactured a fictitious record to justify her termination.  By Ms. Cosby's own testimony, she acknowledged her mistakes in ordering supplies, her inability to complete the grievance log in a timely manner, and her failure to comply with Correct Care's call-out procedure.  Therefore, Ms. Cosby cannot maintain a claim for a breach of the implied covenant of good faith and fair dealing.[49]  Accordingly, Correct Care's Motion for Summary Judgment on Ms. Cosby's breach of the implied covenant claim is **GRANTED**.

---

[47] Cosby Dep. 60:13–16.

[48] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 444 (Del. 1996) (stating "[d]islike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of at-will employment").

[49] *See Reed v. Agilent Technologies, Inc.*, 174 F. Supp. 2d 176, 191–92 (D. Del. 2001) (granting Defendant's Motion for Summary Judgment on the implied covenant claim because Plaintiff admitted to the wrongdoing alleged by employer, and therefore, Plaintiff could not establish sufficient evidence to support a claim that employer manufactured grounds for termination).

### B. Ms. Cosby's DDEA claim must also be dismissed on summary judgment.

In addition to the breach of the implied covenant claim, Ms. Cosby also argues that Correct Care violated the DDEA when it decided to terminate her employment. The language of the DDEA is virtually identical to 42 U.S.C. § 2000(e) of the federal Civil Rights Act of 1964 (Title VII). Accordingly, when construing the DDEA, Delaware courts look to how the federal courts in the Third Circuit and the District of Delaware have construed Title VII cases.[50] Based on this guidance from federal courts, the Delaware Supreme Court adopted the test set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* for determining whether a plaintiff can maintain a DDEA claim.[51] The *McDonnell Douglas* test requires the plaintiff to establish

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[52]

In order to establish this prima facie case, a plaintiff must prove these elements by a preponderance of the evidence, which can be done by showing evidence that the employee was treated less favorably by his or her employer because of his or her status as a member of a protected class.[53] If the plaintiff can satisfy this initial burden, the employer must then "articulate some legitimate,

---

[50] *E.g.*, *Riner v. Nat'l Cash Register*, 434 A.2d 375, 376 (Del. 1981); *Giles v. Family Court of Delaware*, 411 A.2d 599, 601–02 (Del. 1980).

[51] *E.g.*, *Riner*, 434 A.2d at 601; *Giles*, 411 A.2d at 376.

[52] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[53] *E.g.*, *Mosca v. Cole*, 217 Fed. Appx. 158, 161 (3d Cir. 2006).

14

nondiscriminatory reason for the employee's rejection."[54]   If the employer can make this showing, the plaintiff must be given the opportunity to show the employer's stated reason for rejection was merely a pretext for prohibited discrimination.[55]

When reviewing the termination of an employee rather than the hiring process, as was the context of the *McDonnell Douglas* case, courts look to whether the employee was terminated because of her status in a protected class.  In other words, there must be a connection or nexus between the adverse employment decision and the employee's status as a member of the protected class.[56]  Accordingly, when a court is confronted with a DDEA claim based on termination, the fourth element of the *McDonnell Douglas* test requires the court to determine whether there was a connection or nexus between the firing decision and membership in a protected class.[57]

Here, Ms. Cosby is able to easily satisfy the first three elements of the *McDonnell Douglas* test.  She is a member of a protected class, race, because she is African American.  She was qualified for the job evidenced by the fact that Correct Care hired Ms. Cosby for the position.  Ms. Cosby suffered an adverse employment decision in that she was fired.  There are no facts of record in this case, however, supporting the final element of the *McDonnell Douglas* test.

---

[54] *McDonnell Douglas Corp.*, 411 U.S. at 802.

[55] *Id.* at 804.

[56] *See Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008) (requiring the Plaintiff to show a nexus between her pregnancy and her termination to make the prima facie showing of discrimination required under the *McDonnell Douglas* framework).

[57] *E.g.*, *id.*; *Ennis v. Del. Transit. Corp.*, 2015 WL 1542151, at *5 (Del. Super. Mar. 9, 2015).

To satisfy this final element, Ms. Cosby must show that there is a connection between the adverse employment decision and her race.[58] In order to make this showing, she must present evidence that Correct Care treated her less favorably than others due to her race.[59] The only evidence she cites regarding being treated differently based on race is that Caucasian employees were physically handed a key to their office, while Ms. Cosby had to wait for Ms. Roy-Stevenson to open the office for her.[60] While this may provide a reasonable inference that Ms. Cosby was treated differently on this occasion, there is no evidence of a connection between her termination and the fact that she is African American. Neither side argues that this incident had any bearing on Correct Care's termination decision. Accordingly, Ms. Cosby has not demonstrated a connection or nexus between her race and Correct Care's decision to terminate her employment. Therefore, she does not identify evidence satisfying her initial burden of establishing a prima facie case of discrimination and cannot sustain a DDEA claim.

Even if Ms. Cosby were able to establish a prima facie case of discrimination by providing a connection between her race and the termination decision, the balance of the analysis independently provides that Ms. Cosby's DDEA claim fails. First, Correct Care adequately rebuts any presumption of discrimination by providing legitimate, nondiscriminatory reasons for its decision.

---

[58] *E.g.*, *Doe*, 527 F.3d at 366; *Ennis*, 2015 WL 1542151, at *5

[59] *E.g.*, *Mosca v. Cole*, 217 Fed. Appx. 158, 161 (3d Cir. 2006).

[60] After a theft in the office occurred, Correct Care determined the best way to secure the office was to restrict access to keys to three individuals. Those who did not have keys had to have one of the three individuals with keys unlock their office. Ms. Roy-Stevenson was one of the three individuals who had access to a key. Ms. Cosby along with several other employees had to have Ms. Roy-Stevenson unlock their offices. There is evidence that Ms. Roy-Stevens physically handed her key to some Caucasian employees so they could unlock their offices despite being a violation of the new security protocol. However, Ms. Roy-Stevenson refused to hand her key to two African American employees and instead made them wait for her to unlock their office.

16

Correct Care's reason for termination was that Ms. Cosby failed to meet the expectations of the job because she failed to properly order supplies, failed to maintain the supply closet in an orderly fashion, failed to complete the grievance logs, and failed to follow the company's call-out procedure. As such, even if Ms. Cosby had made the required showing to establish a prima facie case of discrimination, Correct Care satisfied its rebuttal burden under the *McDonnell Douglas* test.

Consequently, setting aside the lack of a nexus discussion above, under this alternative analysis, the burden then shifts back to Ms. Cosby to show that Correct Care's proffered reasons for terminating her were merely a pretext for discrimination. To make this showing, Ms. Cosby must offer "specific and significantly probative evidence that the [defendant's] alleged purpose is a pretext for discrimination."[61] At this stage, Ms. Cosby would be required to offer evidence sufficient to convince the fact-finder that Correct Care's stated reasons for the termination were false.[62] Ms. Cosby can accomplish this by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action."[63] Such evidence must be sufficient for the fact-finder to "infer that the employer did not act for [the asserted] non-discriminatory reasons."[64]

In an attempt to satisfy this burden, Ms. Cosby again emphasizes that Ms. Roy-Stevenson failed to adequately train her and interrupted her work to give her

---

[61] *Boggerty v. Stewart*, 14 A.3d 542, 554 (Del. 2011).

[62] *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (requiring the plaintiff to convince the fact-finder that the employer's proffered reason for termination was false).

[63] *Id.*

[64] *Id.*

new tasks to complete. Ms. Cosby argues this precluded her from completing her designated work assignments. She also claims Ms. Roy-Stevenson misrepresented to Ms. May the quality of her work and missed shifts. Ms. Cosby argues that these facts satisfy the burden of showing that Correct Care's legitimate reasons for termination were merely a pretext for discrimination.

Ms. Cosby's proffered evidence does not reach the level of "significantly probative evidence" that Correct Care's alleged purpose is a pretext. She did not provide any evidence that she actually met Correct Care's expectations. Namely, she did not offer any evidence that she properly ordered supplies, properly maintained the supply closet, or properly completed the grievance log, nor did Ms. Cosby show she properly complied with Correct Care's call-out procedure for missing work. She did not provide any evidence to demonstrate any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Correct Care's reasons for terminating her. Accordingly, Ms. Cosby did not meet the burden for showing Correct Care's reasons for termination were merely a pretext for discrimination.

Consequently, even if Ms. Cosby could establish a prima facie case of discrimination by satisfying all four elements of the *McDonnell Douglas* test, she does not identify sufficient evidence for summary judgment evaluation purposes to show that Correct Care's legitimate reasons for terminating her employment were merely a pretext for discrimination. Therefore, she is unable to satisfy the requirements for maintaining a DDEA claim. As such, Correct Care's Motion for Summary Judgment on Ms. Cosby's DDEA claim is **GRANTED**.

## V.    Conclusion

Even after considering all evidence in the light most favorable to the Ms. Cosby, she cannot maintain a claim under the implied covenant of good faith and

18

fair dealing or under the DDEA.  Since there are no material facts in dispute, Correct Care is entitled to judgment as a matter of law.  Accordingly, Defendant Correct Care Solution's Motion for Summary Judgment is **GRANTED**.

/s/Jeffrey J Clark
Judge